UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MOHAMMED NASSER,

                Plaintiff,                Case No. 1:20-cv-11752

                                        District Judge Thomas L. Ludington

v.                                  Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

                Defendant.

_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO DENY
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 20),
GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF
No. 22) and AFFIRM THE COMMISSIONER'S DECISION**

**I.**    **RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (ECF No. 20), **GRANT** Defendant's motion for summary judgment

(ECF No. 22), and **AFFIRM** the Commissioner's decision.

**II.**    **REPORT**

        Plaintiff[1] Mohammed Mason Nasser brings this action under 42 U.S.C. §

405(g) and 42 U.S.C. § 1383(c)(3) for review of a final decision of the

_____

[1] As the result of what appears to be error, Plaintiff's attorney Ronald Glotta is
listed as a consolidated appellant on CM/ECF.

Commissioner of Social Security (Commissioner) denying his applications for Disability Insurance (DI) benefits and Supplemental Security Income (SSI).  This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary judgment (ECF No. 20), the Commissioner's cross-motion for summary judgment (ECF No. 22), Plaintiff's reply (ECF No. 24), and the administrative record (ECF No. 15).

### A.    Background and Administrative History

#### 1.    Prior claims

Plaintiff filed prior claims for DI benefits and SSI on August 14, 2014.  (*See* ECF No. 15, PageID.234.)  A hearing regarding these prior claims was held on June 9, 2016, and on August 8, 2016, Administrative Law Judge (ALJ) Carol Guyton found that Plaintiff was not disabled within the meaning of the Social Security Act.  (ECF No. 15, PageID.231-252.)

#### 2.    Current claims and appeal

In his October 27, 2017 applications for disability insurance benefits (DIB) and SSI, Plaintiff alleges his disability began on February 4, 2014, at the age of 31. (ECF No. 15, PageID.402-412.)  In his disability report, he lists lower back injury, right shoulder injury, hip injury-anterosuperior acetabular laberal tear – right, neck pain, depression and mental issues, high blood pressure, high cholesterol, diabetes, thoracic disc herniation, and lumbar disc herniation as limiting his ability to work.

2

(ECF No. 15, PageID.288.)  His applications were denied on March 6, 2018.  (ECF No. 15, PageID.287-288.)

Plaintiff requested a hearing by an ALJ.  (ECF No. 15, PageID.305-306.) ALJ Roy E. LaRoche, Jr. held hearings on March 6 and May 1, 2019, at which Plaintiff and a vocational expert (VE), Diane Regan, testified.  (ECF No. 15, PageID.185-230.)  On May 29, 2019, ALJ LaRoche, Jr. issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act from August 8, 2016,[2] the date of the prior unfavorable decision, through the date of the decision.  (ECF No. 15, PageID.164-184.)[3]

---

[2] The ALJ may have mistakenly listed the date as August 4, 2016, in the concluding paragraph of his decision.  (ECF No. 15, PageID.178.)

[3] In so doing, the ALJ stated:

> Administrative Law Judge (ALJ) Carol Guyton issued an unfavorable decision on August 8, 2016, finding the claimant not disabled from August 14, 2014 through the date of the decision (Ex. B1A/17).  The claimant appealed the unfavorable decision; however, the Appeals Council denied the request for review (Ex. B2A/1).  Thus, ALJ Guyton's unfavorable decision, dated August 8, 2016, became the final decision of the Commissioner, binding on all parties.  Accordingly, the issue of disability is *res judicata* through the date of that decision.  While the undersigned has considered all of the medical records, the undersigned attributes less weight to the evidence of disability prior to August 9, 2016, since the issue of disability is *res judicata* up to that date.  As further discussed below, the undersigned finds there has been a change in the claimant's condition since ALJ Guyton's decision.

\* \* \*

3

Plaintiff submitted a request for review of the hearing decision/order.  (ECF No. 15, PageID.391-401.)  However, on May 13, 2020, the Appeals Council denied Plaintiff's request for review.  (ECF No. 15, PageID.153-158.)  Thus, ALJ LaRoche, Jr.'s decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on June 30, 2020.  (ECF No. 1.)

## B.   Plaintiff's Medical History

---

Administrative Law Judge Guyton's prior finding concerning the claimant's residual functional capacity is binding absent evidence of an improvement or change in condition since the prior hearing.  *See, Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997); Acquiescence Ruling 98-4(6) (SSA must adopt a finding of a claimant's residual functional capacity or other finding required under the applicable sequential evaluation process for determining disability, made in the final decision by an ALJ or Appeals Council on a prior disability claim unless new and additional evidence or changed circumstances provide a basis for a different finding of the claimant's residual functional capacity).

As explained in the analysis below, the undersigned finds that the evidence of record shows that there has been a change in the claimant's condition since the prior decision and that the substantial evidence of record supports the aforementioned residual functional capacity.  Specifically, new evidence regarding the claimant's conditions support a change in the residual functional capacity to the point where the light exertional level is no longer appropriate.

(ECF No. 15, PageID.167, 172.)

4

The administrative record contains approximately 201 pages of medical records, which were available to the ALJ at the time of his May 29, 2019 decision. (ECF No. 15, PageID.543-744 [Exhibits B1F-B19F].)  These materials will be discussed in detail, as necessary, below.

### C.    The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 4, 2016, his alleged onset date.  (ECF No. 15, PageID.170.)  At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: disorders of the cervical, thoracic and lumbar spine, obesity, diabetes mellitus, major depressive disorder, and personality disorder.  (ECF No. 15, PageID.170.)  At **Step 3**, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (ECF No. 15, PageID.170-171.)  **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity (RFC)[4] and determined that Plaintiff had the RFC:

> to perform sedentary work . . . except occasional pushing and pulling with the bilateral lower extremities; requires the ability to stand for 2-3 minutes after 30 minutes of sitting; can occasionally balance, stoop,

---

[4] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

crouch and climb ramps and stairs; no climbing ladders, ropes, or scaffolds; no kneeling or crawling; no exposure to unprotected heights and dangerous moving machinery; no overhead reaching with the bilateral upper extremities; frequently perform handling and fingering with the bilateral upper extremities; requires use of a handheld assistive device for ambulation and while standing; limited to simple and routine tasks, involving only simple, short instructions and simple work-related decisions with few, if any, workplace changes; and no contact with the general public.

(ECF No. 15, PageID.172-177.)  At **Step 4**, the ALJ determined that Plaintiff was unable to perform any past relevant work.  (ECF No. 15, PageID.177.)  At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as inspector and sorter.  (ECF No. 15, PageID.177-178.)  The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, since August 8, 2016.  (ECF No. 15, PageID.178-179.)

### D.   Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see*

*also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "[s]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence

7

standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## E.    Analysis

Plaintiff's motion, though poorly edited,[5] essentially argues that had the ALJ properly evaluated the medical opinions of record in accordance with 20 C.F.R. § 404.1520c, he would have found the opinion of Plaintiff's treating physician, Dr. Haranath Policherla, most persuasive.  In so doing, he asserts that the doctors whose opinions the ALJ found more persuasive did not and could not address the intersection between his mental and physical impairments, or his diabetes mellitus, C-Pap, or high blood pressure, as required by the regulations.  (ECF No. 20, PageID.761-778.)  The Commissioner opposes Plaintiff's motion, arguing that the ALJ properly applied the regulations for analysis of medical opinion evidence, and that substantial evidence supports his findings.  (ECF No. 22, PageID.785-786,

---

[5] Among other errors, and contrary to Fed. R. Civ. P. 5.2(a)(1), Plaintiff's motion for summary judgment lists Plaintiff's full social security number.  (ECF No. 20, PageID.752.)  This is all too common in Social Security cases, and is especially egregious here as the Court previously warned Plaintiff's counsel (ECF No. 8, PageID.126-127) of the same mistake in the caption of Plaintiff's complaint (*see* ECF No. 1.)

790-809.)  In reply, Plaintiff reiterates the arguments made in his summary

judgment motion.  (ECF No. 24, PageID.813-824.)

> **1.   The Court should find no error in the ALJ's analysis of Dr. Policherla's opinion**

In February 2019, Plaintiff's treating physician Dr. Policherla completed a

physical RFC questionnaire, indicating that he had treated Plaintiff on a monthly

basis since September 2017, and listing Plaintiff's diagnoses related to his thoracic,

lumbar, and cervical spine.  (ECF No. 15, PageID.664.)  Referencing a number of

Plaintiff's MRIs, Dr. Policherla opined that Plaintiff could not sit or stand for any

amount of time at one time, and could never lift any weight, look down, look up,

twist, stoop, crouch/squat, climb ladders, or climb stairs.  (ECF No. 15,

PageID.664-667.)  He also declined to complete a large portion of the

questionnaire, opting instead to write that Plaintiff was unable to work, with an

arrow down the form.  (ECF No. 15, PageID.666-667.)

The ALJ found the opinion "unpersuasive," stating:

> Haranath Policherla, M.D. opined the claimant cannot walk any city
> blocks; cannot sit, stand, or walk any amount of time; cannot lift any
> amount of weight; and never perform postural activities (Ex. B16F/).
> The undersigned finds this opinion unpersuasive.  Specifically, Dr.
> Policherla's opinion is not supported by his treatment records.  His
> records revealed 5/5 power in the left upper and lower extremities and
> 4 to 5/5 in the right upper and lower extremities proximally and
> distally (Ex. B18F/2).  The claimant had 5/5 power in the left lower
> extremity and 4 to 5/5 in the right lower extremity (Id).  Further, the
> claimant's toe-walking, heel-walking, and tandem gait were within
> normal limits.  Ex. B18F/24, B18F/26, F18F/27).  The opinion is also

9

not consistent with the consultative examination of Dr. Shelby-Lane (Ex. B10F/3).

A deposition of Dr. Policherla is also present in the evidence of record, where he noted the claimant was unable to work and would miss more than two days per month if he tried to work (Ex. B20E/11). The undersigned finds the statements of Dr. Policherla in the deposition unpersuasive.  Further, the issue of disability is a determination that is reserved for the Commissioner of Social Security (20 C.F.R. 404.1527(d)(2), 416.927(d)).

(ECF No. 15, PageID.175-176.)

### a.    Standard

As Plaintiff filed his applications after March 27, 2017,[6] the ALJ reviewed the subject medical opinions according to the standards provided in 20 C.F.R. § 404.1520c, which states that, "We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."  20 C.F.R. § 404.1520c(a).  Instead, an ALJ must evaluate the persuasiveness of the medical opinions submitted, and articulate the findings using the following factors: supportability, consistency, relationship with the claimant, and specialization, with supportability and consistency being the most important.  20 C.F.R. § 404.1520c.

---

[6] Plaintiff acknowledges that this is the applicable regulation, but also cites to the previous one – 20 C.F.R. § 404.1527.  (*See, e.g.*, ECF No. 20, PageID.766, 769, 775.)  He hints that the old standard may, perhaps, have been a preferable one: "Prior to March 17 2017, the commission's regulations were clear and logical." (ECF No. 20, PageID.761.)

For several reasons, discussed below, the Court should that the ALJ properly evaluated Dr. Policherla's opinion in accordance with these regulations.

### b.    Dr. Policherla's own treatment records

First, the ALJ properly noted that Dr. Policherla's opinion of total disability is inconsistent with and unsupported by his own treatment records, which note full and nearly full strength in Plaintiff's upper and lower extremities (ECF No. 15, PageID.175 (citing ECF No. 15, PageID.674)), as well as toe/heel walking and tandem gait within the normal limits (ECF No. 15, PageID.175 (citing ECF No. 15, PageID.696, 698, 700).)  Plaintiff seems to suggest that the opinion is supportable merely because, "Dr. Policherla performed extensive tests and treatment and clinical findings."  (ECF No. 20, PageID.767.)   But the fact that he performed tests and treatment and made clinical findings is not enough, no matter how "extensive;" his opinion needs to be internally *consistent* with the test results and treatment rendered.  Additionally, as the ALJ stated in his RFC assessment prior to the analysis of Dr. Policherla's opinion, despite Plaintiff's and Dr. Policherla's assertions regarding the severity of his spinal impairments, Dr. Policherla prescribed conservative treatment, including continuation with Norco and a follow-up visit with his primary care provider for diabetes control.  (ECF No. 15, PageID.174 (citing ECF No. 15, PageID.687).)  *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 725 (6th Cir. 2013) (conservative treatment a valid

11

consideration when forming an RFC assessment); *see also Athey v. Comm'r of Soc. Sec.*, No. 13-cv-12528, 2014 WL 4537317, at *4 (E.D. Mich. Sept. 11, 2014) (reasoning that it is appropriate to read an ALJ's decision as a whole); *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004).

### c.   Opinion by Cynthia Shelby-Lane, M.D.

Dr. Policherla's opinion is also inconsistent with that of consultative examiner Dr. Shelby-Lane, as the ALJ found.  (ECF No. 15, PageID.175 (citing ECF No. 15, PageID.646).)  On January 31, 2018, Dr. Shelby-Lane conducted a consultative examination of Plaintiff and a review of his medical records, including MRIs, and found:

> **LOWER BACK INJURY, RIGHT SHOULDER INJURY, HIP INJURY, NECK PAIN, THORACIC DISC HERNIATION AND LUMBAR DISC HERNIATION**: The examinee has a history of chronic pain due to previous injuries.  On exam today, he is using a back brace and cane.  He has a limp on the right side.  He was not willing to do heel walk or toe walk.  He has decreased range of motion of the right shoulder joint and right knee joint and chronic ongoing pain.  He is taking multiple medications for the problem.

(ECF No. 15, PageID.647.)  On the basis of these findings, she provided the following Medical Source Statement (MSS):

> Based upon today's exam, including the history and physical exam, the examinee has frequent limitations with standing, walking, lifting, pushing, pulling, reaching, and bending due to the findings noted above, which includes use of a cane for balance and support and a limp on the right, use of a back brace, slow execution of tandem walk, and not willing to due [sic] heel walk or toe walk because of pain on

12

the right side, decreased range of motion of the shoulder joint (0-120), and decreased range of motion of the right knee (0-140).

(ECF No. 15, PageID.647.)

The ALJ found Dr. Shelby-Lane's MSS persuasive, stating:

Dr. Shelby-Lane's opinion is supported by her examination of the claimant, which revealed the need to use of a cane for balance and support, a limp on the right, use of a back brace, slow execution of tandem walk, and decreased range of motion of the shoulder right knee (Id)  The opinion is also consistent with the objective evidence in the record that reveals diabetic sensory neuropathy and disorders of the cervical, lumbar, and thoracic spine (Ex. B12F, B14F, B15F, B18F/9, B18F/13).

(ECF No. 15, PageID.175.)

While Plaintiff challenges the ALJ's finding that Dr. Shelby-Lane's opinion is persuasive, he acknowledges that she did conduct an examination, and cursorily asserts that she confirmed Dr. Policherla's opinion.  (ECF No. 20, PageID.769, 771-772; ECF No. 24, PageID.821-822.)  This is curious.  Although Dr. Shelby-Lane lists essentially lists the same diagnoses and/or symptoms as Dr. Policherla (*compare* ECF No. 15, PageID.647 with ECF No. 15, PageID.664), her opinion diverges from rather than confirms his.  Whereas Dr. Shelby-Lane lists frequent limitations and the need for a cane, Dr. Policherla opines that Plaintiff is entirely precluded from work.  And Plaintiff provides no reason to believe the evidence the ALJ relied upon in support of his findings related to Dr. Shelby-Lane's opinion are inaccurate.  Instead, Plaintiff argues that Dr. Policherla's specialty is superior to

13

that of Dr. Shelby-Lane, who is board certified in emergency medicine.  But this is only one consideration, going to the weight of the opinion, and does not undermine the ALJ's findings regarding supportability and consistency, which are the two most important factors for evaluating medical opinion evidence.  20 C.F.R. § 404.1520c.   In any case, this Court will not re-weigh the opinions, *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011), and under the current regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources," 20 C.F.R. § 404.1520c(a).

> ### d.   Disability determination is an issue reserved to the Commissioner

Finally, the ALJ properly discounted Dr. Policherla's opinion insofar as he asserted Plaintiff would be precluded from all work.  As the ALJ stated (ECF No. 15, PageID.176), the determination of disability itself is an issue reserved to the Commissioner.  *See* 20 C.F.R. § 404.1520b(c)(3); 20 C.F.R. § 404.1527(d).

> ## 2.   The Court should also find no error in the ALJ's analysis of the opinions by Thomas Flake, M.D., and Kathy Morrow, Ph.D.

> ### a.   Prior administrative medical findings

On March 6, 2018, state agency medical consultant Dr. Flake considered the evidence of record and rendered a prior administrative medical finding on

14

Plaintiff's physical RFC which adopted the prior ALJ's August 8, 2016 decision that Plaintiff could perform light work.  (ECF No. 15, PageID.264-268.)  State agency consultant Dr. Morrow did the same on December 28, 2017, adopting the prior ALJ's mental RFC.  (ECF No. 15, PageID.282-283.)

### b.    ALJ addressed both opinions

The ALJ addressed both opinions, stating:

State agency consultant, Thomas Flake, MD adopted the prior ALJ finding that the claimant could perform light work; occasional postural activities except never kneeling, crawling, or climbing ladders, ropes, or scaffolds; limited reaching in all directions including overhead; an[d] must avoid all exposure to hazards (Ex. B3A/7, B4A/7).  Dr. Flake's opinion is supported by [his] area of specialty, programmatic knowledge and his review of the available medical evidence that reflects a history of diabetes mellitus with sensory neuropathy, and disorders of the cervical, lumbar spine disorders and cervical radiculopathy (Ex. B6F/1, B18F/9, B18F/13).  It is also consistent with examination findings that the claimant's toe-walking, heel-walking, and tandem gait were within normal limits and mild changes to the claimant's spine (Ex. B12F, B14F, B15F, B18F/24, B18F/26, B18F/27).  However, the evidence of record supports a sedentary exertional limitation due to the claimant's obesity, cervical radiculopathy, spine disorders, and diabetes with peripheral neuropathy (B12F, B14F, B15F, B18F/9, B18F/13).

State agency consultant, Kathy A. Morrow, Ph.D. also adopted the prior ALJ's findings and found the claimant has mild limitations in understanding, remembering, or applying information, moderate limitations in interacting with others, moderate limitations in concentration, persistence, or maintaining pace, and mild limitations in adapting or managing oneself.  (Ex. B3A/5, B4A/5).  The undersigned finds the opinion persuasive.  Dr. Morrow's opinion is supported by her area of specialty, programmatic knowledge and [her] review of the available medical evidence at the time of [her] review. The evidence of record reflects a history of major depressive disorder

and personality disorder; however, the claimant's examinations revealed normal thought processes, intact cognitive function, attentive and cooperative during examinations, and reported no suicidal thoughts (Ex. B8F/2, B8F/6, B9F/1, B18F/1).  Dr. Morrow's opinion is also consistent with the claimant's mental health progress notes (Ex. B9F, B11F).

(ECF No. 15, PageID.176.)

### c.    Analysis

For the reasons that follow, the above represents a proper analysis of medical opinions under 20 C.F.R. § 404.1520c, with a focus on supportability and consistency.

Plaintiff asserts that the ALJ improperly relied on the opinions of Drs. Flake and Morrow because neither had a treatment relationship with him nor conducted an examination.  (ECF No. 20, PageID.768-770; ECF No. 24, PageID.817-819.) But under the current regulations applicable to the analysis of medical opinions, an ALJ need not afford any specific weight to the opinion of a treating source, 20 C.F.R. § 404.1520c(a).  And, supportability and consistency, *not* treatment or examining relationship, are the most important factors.

Further, in response to the Commissioner's motion for summary judgment, (essentially, Plaintiff's reply brief), Plaintiff argues that the ALJ should have found Dr. Policherla's opinion more persuasive than Dr. Morrow's because she has a Ph.D. rather than an M.D., like Dr. Policherla (ECF No. 24, PageID.818-819), is also unavailing.  Again, supportability and consistency are the most important

factors and, as described above, substantial evidence supports the ALJ's finding

that Dr. Policherla's opinion is inconsistent with and unsupported by the record.

Additionally, Plaintiff cites to MRIs of his spine and shoulder from 2016,

2014, and 2013, and states:

> The legal question presented is whether either Dr. Flake or Dr.
> Morrow reach diagnoses consistent with the clinical test above
> quoted.  The diagnoses offered by Dr.'s [sic] Flake and Dr. Morrow
> include only "spine disorders".  ECF No. 15, PageID 277 (Page 125)
> such a diagnosis is inconsistent with the precision of the MRI
> findings.  It is therefore not persuasive and not supported by the
> objective evidence.  "Spine disorders" as a potential diagnosis covers
> everything from cancer of the spine to minor sprains of the spine and
> does not address the right hip acetabular impingement syndrome, at
> all.  Nor does it even mention the right shoulder.

(ECF No. 24, PageID.817.)  But diagnoses are not limitations. *Hill v. Comm'r of

Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) ("[D]isability is determined by the

functional limitations imposed by a condition, not the mere diagnosis of it."

(citing *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)).  And Plaintiff offers no

additional specific limitations related to hip and shoulder impairments, as is his

burden. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422-23 (6th Cir. 2008).

Further, the ALJ included additional limitations in the RFC beyond those

recommended by Dr. Flake.  *See Mosed v. Comm'r of Soc. Sec.*, No. 2:14-cv-

14357, 2016 WL 6211288, at *7 (E.D. Mich. Jan. 22, 2016), report and

recommendation adopted by 2016 WL 1084679 (E.D. Mich. Mar. 21, 2016)

("Plaintiff's argument that the ALJ erred in assessing a *more restrictive* RFC than

17

that opined by the State agency consultants is curious and unavailing.") (citing

*Warren v. Comm'r of Soc. Sec.*, No. 13-cv-13523, 2014 WL 3708565, at *4 (E.D.

Mich. July 28, 2014)).  It also bears noting that these MRIs are largely from pre-

August 8, 2016.

### 3.   Finally, the Court should find no error in the ALJ's consideration of Plaintiff's impairments

The second issue raised in Plaintiff's summary judgment motion is difficult

to follow, but as far as I can discern, Plaintiff asserts that in assessing his RFC, the

ALJ failed to consider all of his impairments in combination.  (See ECF No. 20,

PageID.772-777; ECF No. 24, PageID.823-824.)  Plaintiff, citing SSR 96-8p,

states:

> Claimant has been denied psychiatric treatment based upon cost and
> has sought alternative ways to receive psychotropic medication and
> has needed treatment for diabetes mellitus, is obese and these
> impairments combined with claimant's major distress disorder
> personality disorder along with his physical problems prohibit gainful
> employment.

(ECF No. 20, PageID.772.)[7]

---

[7] Plaintiff cursorily references an inability to afford his medication but makes no
further argument in this regard, thus waiving any associated claim of error.
*See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted
to in a perfunctory manner, unaccompanied by some effort at developed
argumentation, are deemed waived. It is not sufficient for a party to mention a
possible argument in the most skeletal way, leaving the court to ... put flesh on its
bones.") (quotation marks and citations omitted).

18

Plaintiff first suggests that the ALJ should have credited the 2014 opinion of

Mufid B. Al-Najjar, M.D. in assessing his mental RFC, which would have

supported a finding of a "rigid lifestyle" incompatible with the ability to work.

(ECF No. 20, PageID.772-773 (citing SSR 85-15).)  However, as Defendant

asserts (ECF No. 20, PageID.805-806), Dr. Al-Najjar proffered this opinion well

before August 2016, and the ALJ concluded that Plaintiff's condition had changed

since that time.  (ECF No. 15, PageID.167, 172.)  Further, the ALJ did not just

manufacture his own mental RFC.  Rather, he considered and incorporated Dr.

Morrow's opinion, which Plaintiff unsuccessfully challenges, as well as Plaintiff's

report that he felt 50 percent better with medication, and medical records through

January 2018 showing medication changes to help stabilize his depression and

inability to sleep.  (ECF No. 15, PageID.175 (citing ECF No. 15, PageID.269, 283,

630, 634, 639, 655).)

Plaintiff next asserts that he received psychotropic medications by

prescription from Dr. Policherla, and that Dr. Policherla's opinion is consistent

with the records from Northwest Psychiatric Counseling Center, both of which

provide the basis "for accepting Dr. Policherla's opinion and only Dr. Policherla's

opinion."  (ECF No. 20, PageID.773 (citing ECF No. 15, PageID.506); ECF No.

24, PageID.823-824 (citing ECF No. 15, PageID.482-643).)  In other words, he

asserts that Dr. Policherla is uniquely qualified to address the relationship between

19

his physical and mental impairments.  (ECF No. 20, PageID.773.)  But Plaintiff

only directs the Court generally to the records from Northwest Psychiatric

Counseling Center, making no specific connection between information included

in those records and Dr. Policherla's opinion or his RFC.  And this argument

ignores the ALJ's valid reasons, addressed in greater detail above, for finding Dr.

Policherla's opinion unpersuasive.

Finally, Plaintiff argues that "[t]he ALJ cavalierly dismissed [his] obesity,

C-Pap machine, high blood pressure, chronic pain even though the Regulations

maintain the ALJ must assess whether the claimant can perform work activities on

a sustained basis."  (ECF No. 20, PageID.774-775.)  The ALJ did, however, find

obesity to be a severe impairment, and explicitly stated that he considered

Plaintiff's obesity in combination with Plaintiff's other impairments to formulate

the RFC in accordance with SSR 19-2p.[8]  (ECF No. 15, PageID.170, 174-175.)  He

---

[8] Plaintiff cites to SSR 02-1p for the evaluation of obesity, which has been
rescinded.  SSR 19-2p states, in part:

> We assess the RFC to show the effect obesity has upon the person's
> ability to perform routine movement and necessary physical activity
> within the work environment.  People with an MDI of obesity may
> have limitations in the ability to sustain a work function over time.  In
> cases involving obesity, fatigue may affect the person's physical and
> mental ability to sustain work activity.  This may be particularly true
> in cases involving obesity and sleep apnea.

(2019 WL 2374244, at *4 (May 20, 2019)).

also explicitly considered Plaintiff's allegations of pain, use of a C-Pap machine, and high blood pressure throughout his decision, but found that although Plaintiff's impairments could reasonably be expected to cause his alleged symptoms, Plaintiff's statements concerning the intensity and limiting effects of those symptoms was not entirely consistent with the other evidence of record.  (ECF No. 15, PageID.170, 173-175.)  And Plaintiff fails to meaningfully attack the ALJ's reliance on the evidence cited.  Moreover, beyond simply implying a complete inability to work, Plaintiff offers no additional limitations confirmed by the record associated with these impairments.  *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.") (citing *Young v. Sec'y of Health and Human Servs.*, 925 F.2d 146, 148 (6th Cir. 1990)); *see also Jordan*, 548 F.3d at 423 ("The claimant, however, retains the burden of proving her lack of residual functional capacity.").[9]

Accordingly, Plaintiff has failed to demonstrate error in the ALJ's analysis of his impairments.

---

[9] I note that Plaintiff also references MRI results in his Statement of Facts, with the focus on a February 14, 2019 MRI of his thoracic spine.  (ECF No. 20, PageID.756-757 (citing ECF No. 15, PageID.656).)  The ALJ, however, discussed this MRI, explaining that it showed only minimal to mild findings (ECF No. 15, PageID.176 (citing ECF No. 15, PageID.656)), which is confirmed by a review of the record.

### F.    Conclusion

Plaintiff has the burden of proof on statements of error.  Plaintiff has not shown legal error that would upend the ALJ's decision, and the ALJ's decision is supported by substantial evidence.  For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 20), **GRANT** Defendant's motion for summary judgment (ECF No. 22), and **AFFIRM** the Commissioner of Social Security's decision.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  February 16, 2022

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE